# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**TISHA GRIM,**

    **Plaintiff,**

    v.                                 **Civil Action 2:16-cv-604**
                                            **Chief Judge Edmund A. Sargus, Jr.**
                                            **Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Tisha Grim, filed this action under 42 U.S.C. § 405(g) seeking review of a decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income. For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the Administrative Law Judge ("ALJ") under Sentence Four of § 405(g).

## I. FACTUAL AND MEDICAL BACKGROUND

Plaintiff filed this case on June 27, 2016 (Doc. 4), and the Commissioner filed the administrative record on August 4, 2015 (Doc. 10). Plaintiff filed a Statement of Specific Errors on October 24, 2016 (Doc. 10) and the Commissioner responded on December 12, 2016 (Doc. 11). Plaintiff did not file a Reply Brief.

### A. Personal Background

Plaintiff was born on April 10, 1973, and was thirty-three years old on the alleged onset date of disability. (Tr. 257, PAGEID #: 309). She has a high school education (Tr. 37, PAGEID #: 86), and work experience as a grounds keeper, fast food worker, and a homeless shelter intake specialist. (Tr. 19, PAGEID #: 68).

### B. Relevant Hearing Testimony

Administrative Law Judge Gregory G. Kenyon (the "ALJ") held a hearing on January 29, 2015. (Tr. 31, PAGEID #: 80). During the hearing, Plaintiff testified that she is 4'11" tall and weighs 420 pounds. (Tr. 35, PAGEID #: 84). Plaintiff explained that she has lipedema in her legs, which swell on a daily basis and cause her to fall. (Tr. 41–42, PAGEID #: 90–91 (testifying that her legs "get so tight [she] can't move"); *see also* Tr. 57, PAGEID #: 106 (testifying that she doesn't have "a lot of circulation" in her legs due to lipedema)). Plaintiff also has trouble driving due to the swelling. (Tr. 37, PAGEID #: 86). She takes Ibuprofen for swelling and Vicodin for pain. (Tr. 42, PAGEID #: 91).

Plaintiff elevates her legs at chest level to reduce the swelling. (*Id.*). Plaintiff testified that she is in bed four or five hours per day and elevates her legs for approximately three of those hours. (Tr. 42–43, PAGEID #: 92–93). Plaintiff stated that, when she is not in bed, she typically sits on the couch, where she sometimes elevates her legs. (Tr. 43, PAGEID #: 92). Plaintiff explained that if she doesn't elevate her legs, they swell to the point that she is unable to walk. (Tr. 56, PAGEID #: 105 (stating that if she doesn't elevate her legs, "they're just numb, and they will get heavy"); *see also* Tr. 57–58, PAGEID #: 106–107 (explaining that if she doesn't elevate her legs, her feet swell so large she is unable to wear shoes)).

Vocational Expert Brian Wormer (the "VE") also testified at the hearing. (Tr. 63,

PAGEID #: 112). The VE testified that an individual with Plaintiff's residual functional capacity ("RFC") could not perform Plaintiff's past relevant work. (Tr. 66, PAGEID #: 115). However, the VE opined that, considering the ALJ's restrictions, unskilled, light jobs would be available in the relevant region, even if an individual were restricted to sedentary work. (Tr. 66–68, PAGEID #: 115–17).

In contrast, the VE testified that there would be no competitive work available if the individual restricted to sedentary work also needed to elevate the legs above waist level while sitting down. (Tr. 68–69, PAGEID #: 117–18). The VE stated, "[t]o elevate the legs above waist level in a seated position, in my opinion, one would need to be reclined, and therefore, would not be able to even do sedentary work." (Tr. 69, PAGEID #: 118). The VE elaborated:

> I think when you're elevating your legs as a practical matter, above chest level, you're basically in some sort of a reclined position. Therefore, you're unable to sit up for any of the work. I don't think that one would be able to elevate that high really very much at all outside of normal breaks in a work day. . . . [E]ven if we talk about times when you might be able to do that throughout a work day, I think then we get into the question of on task, off task. And in my opinion, if one's elevating that high, they're basically off task, so if they're doing that more than 10 percent of the day, they're not going to be able to do entry level, unskilled work.

(Tr. 70, PAGEID #: 119).

**C. Relevant Medical Evidence**

On April 2, 2014, vascular surgeon Dr. Randall Slaybaugh opined, *inter alia*, that Plaintiff suffered from severe lipedema (adiposity) of the lower extremities bilaterally and complained of swelling, pain, and a "heavy" feeling in her legs. (Tr. 758, PAGEID #: 813). Dr. Adam Reynolds, who saw Plaintiff on May 16, 2013, also noted the presence of leg swelling. (Tr. 566, PAGEID #: 621).

Plaintiff's podiatrist, Dr. Lee Hlad, completed a RFC questionnaire on June 11, 2014.

3

(Tr. 750–53, PAGEID #: 805–808). Dr. Hlad noted Plaintiff's lipedema and stated that her legs should be elevated during periods of prolonged sitting. (Tr. 751–52, PAGEID #: 806–807). More specifically, Dr. Hlad opined that Plaintiff would need to elevate her legs to hip level for two hours during an eight-hour work day. (Tr. 752, PAGEID #: 807). When asked if Plaintiff's impairments are likely to produce "good days" and "bad days," Dr. Hlad answered "yes" and indicated that Plaintiff's "legs may swell more some days." (Tr. 753, PAGEID #: 808).

Plaintiff's physician is Dr. Monique Brady, who also completed the RFC questionnaire on June 16, 2014. (Tr. 754–57, PAGEID #: 809–12). Dr. Brady opined that Plaintiff's legs should be elevated at heart level 100% of the time while sitting. (Tr. 756, PAGEID #: 811).

**D. Relevant Portions of the ALJ's Decision**

The ALJ found that Plaintiff has not engaged in substantial gainful activity since November 2, 2012, the alleged onset date. (Tr. 14, PAGEID #: 63). The ALJ concluded that Plaintiff had numerous severe impairments, consisting of the residuals of a cervical strain, degenerative disk disease of the thoracic spine, degenerative disk disease of the lumbosacral spine, degenerative joint disease of the knees, migraine headaches, morbid obesity, depression, and anxiety. (*Id.*). The ALJ found that none of Plaintiff's severe impairments met or equaled the requirements of any section of the Listing of Impairments. (Tr. 15, PAGEID #: 64).

The ALJ found that Plaintiff has:

> the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 416.967(a), subject to the following limitations: (1) occasional crouching crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) occasional operation of foot controls; (5) limited to performing unskilled, simple, repetitive tasks; (6) occasional contact with co-workers, supervisors, and the public; (7) no fast paced or strict production quotas; and (8) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in job duties or work routine from one

day to the next.

(Tr. 16–17, PAGEID #: 65–66). The ALJ stated that "no treating or examining sources have recommended any specific restrictions," so any "further restriction would be based solely on speculation." (Tr. 17, PAGEID #: 66).

The ALJ assigned little weight to Dr. Hlad's assessment, stating that his conclusions concerning limitations on Plaintiff's ability to sit and walk were inconsistent with imaging evidence. (*Id.*). According to the ALJ, Dr. Hlad's "assessment is otherwise basically consistent with an ability to perform sedentary work." (*Id.*). Finally, the ALJ noted that Dr. Hlad had checked a box indicating that Plaintiff is a malingerer. (*Id.*).

Similarly, the ALJ assigned little weight to Dr. Brady's assessment. (*Id.*). The ALJ noted Dr. Brady limited Plaintiff to sedentary level work for a total of six hours per day and indicated that she would need to keep her feet elevated above chest level 100 percent of the time. (*Id.*). The ALJ found Dr. Brady's conclusion to be "wholly unsupported by the record." (*Id.*). Although the ALJ noted that Plaintiff has some adipose tissue in her lower extremities due to her extreme obesity, he stated that "[n]o explanation has been provided as to why this would require her to elevate her legs as she and Dr. Brady allege." (Tr. 19, PAGEID #: 68). The ALJ stated that, "[t]o the contrary, the evaluating vascular surgeon recommended weight loss." (*Id.*).

According to the ALJ, considering Plaintiff's age, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 19–20, PAGEID #: 68–69). Based upon the foregoing, the ALJ concluded that Plaintiff has not been under a disability since November 2, 2012, and was not entitled to benefits. (Tr. 21, PAGEID #: 70).

## II. LEGAL STANDARD

Where, as here, a plaintiff proceeding *pro se* does not identify any specific errors with the ALJ's decision, "the Court assumes and liberally construes her Statement of Errors to mean that she is challenging the decision of the ALJ as being unsupported by substantial evidence." *Works ex rel. A.R.W. v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 690, 697 (2012). Under 42 U.S.C. § 405(g), "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To that end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting

20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at \*4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

Upon review of the record, the Court focuses its attention on the weight the ALJ assigned to two treating physicians—Dr. Brady and Dr. Hlad. Both doctors opined that Plaintiff was required to elevate her legs while sitting in order to reduce swelling. More specifically, Dr. Brady indicated that Plaintiff's legs should be elevated at heart level 100% of the time while sitting (Tr. 756, PAGEID #: 811), and Dr. Hlad opined that Plaintiff would need to elevate her legs at hip level for two hours during an eight-hour work day. (Tr. 752, PAGEID #: 807). When Dr. Hlad was asked if Plaintiff's impairments are likely to produce "good days" and "bad days," he checked "yes" and wrote that Plaintiff's "legs may swell more some days." (Tr. 753, PAGEID #: 808). Although Dr. Brady and Dr. Hlad differed concerning the length of time and the height at which Plaintiff needs to elevate her legs, both agreed that some elevation is necessary. (Tr. 756, PAGEID #: 811; Tr. 752, PAGEID #: 807).

The ALJ should have recognized that consistency and weighed the opinions accordingly, *see* 20 C.F.R. § 404.1527(c)(4), but there is no indication that he did so. To the contrary, the ALJ assigned "little weight" to Dr. Brady's assessment and found it "wholly unsupported by the record." (Tr. 17, PAGEID #: 66). The ALJ likewise found "no explanation" as to why Dr. Brady required Plaintiff's legs to be elevated. (Tr. 19, PAGEID #: 68). Thus, the ALJ failed to

7

acknowledge that Dr. Hlad—another treating physician—made the consistent determination that Plaintiff was required to elevate her legs. (*See id*.).

The ALJ also assigned little weight to Dr. Hlad's assessment and found his conclusions concerning Plaintiff's sitting and walking limitations inconsistent with imaging evidence. (*Id*.). The ALJ concluded that Dr. Hlad's "assessment is otherwise basically consistent with an ability to perform sedentary work." (*Id*.). In making this determination, the ALJ overlooked Dr. Hlad's elevation requirement which, according to the VE, excluded her from competitive work. (*See* Tr. 69, PAGEID #: 118 ("To elevate the legs above waist level in a seated position, in my opinion, one would need to be reclined, and therefore, would not be able to even do sedentary work.")).

Even assuming *arguendo* that the ALJ conducted a sufficient controlling-weight analysis to determine if the opinions of Dr. Brady and Dr. Hlad were well-supported and not inconsistent with the other substantial evidence in the case record, *see LaRiccia*, 549 F. App'x at 384, the ALJ failed to give good reasons for the weight he assigned to those opinions, *Dixon*, 2016 WL 860695, at *4. His blanket conclusion that Dr. Brady's opinion was "wholly unsupported by the record" (Tr. 17, PAGEID #: 66) did not acknowledge or consider Dr. Hlad's consistent recommendation. Consequently, the ALJ violated the good reasons rule.

In certain circumstances, however, an ALJ's failure to give good reasons for rejecting the opinion of a treating source may constitute *de minimis* or harmless error. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). *De minimis* or harmless error occurs: (1) if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of the procedural safeguard of the good reasons rule even though an ALJ has not complied with the express terms of the

8

regulation. *Id.* at 547. Because none of those factors apply here, there is no basis for finding harmless error.

Finally, Defendant and the ALJ make much of the fact that Dr. Hlad checked a box on the form indicating that Plaintiff was a malingerer. While this finding may undermine Plaintiff's subjective complaints, it does not invalidate Dr. Hlad's objective determination that Plaintiff must elevate her legs. Nor does it excuse the ALJ from the requirement to examine the consistency between Dr. Hlad's and Dr. Brady's opinions. *See Shackelford v. Comm'r of Soc. Sec.*, No. 1:10-cv-604, 2011 WL 4351607, at *13 (S.D. Ohio Aug. 24, 2011). Based upon the foregoing, the Court finds that remand is warranted. *See id*. (remanding where the ALJ's decision did not reflect an analysis of the § 404.1527 factors, including consistency).

## IV. CONCLUSION

In this case, the ALJ failed to follow the applicable procedural requirements in reaching his disability determination, which precludes meaningful review. Specifically, the ALJ failed to consider that Dr. Brady and Dr. Hlad both required Plaintiff's legs to be elevated during the work day, which the VE found would exclude her from even sedentary work. Moreover, the error was not *de minimis* or harmless. The ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even if his conclusion ultimately may be justified based upon the record. Accordingly, it is **RECOMMENDED** that the Plaintiff's Statement of Errors be **SUSTAINED** to the extent that the case be remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), Sentence Four.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

    IT IS SO ORDERED.


Date: April 27, 2017                                       /s/ Kimberly A. Jolson
                                                                  KIMBERLY A. JOLSON
                                                                  UNITED STATES MAGISTRATE JUDGE